**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

EDWINA DAVIS,

        Plaintiff,

vs.
                                                   Case No. 3:14-cv-1108-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Edwina Davis ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of "limited use of [her] left arm and shoulder," "severe pain and burning in the left arm/hand/shoulder," "degenerative disc disease," and "high blood pressure." See Transcript of Administrative Proceedings (Doc. No. 17; "Tr." or "administrative transcript"), filed December 19, 2014, at 272 (capitalization and emphasis omitted). On May 26, 2011, Plaintiff filed an application for DIB, and on June 4, 2011, she filed an application for SSI. Tr. at 233-34 (DIB); Tr. at 235-42 (SSI). Both applications alleged a disability onset date of June 21, 2002, Tr. at 233, 235, although Plaintiff indicated elsewhere that she "stop[ed]

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 16), filed December 19, 2014; Reference Order (Doc. No. 18), entered December 22, 2014.

working" on May 4, 2009, Tr. at 272 (Disability Report). Plaintiff's applications were denied initially, Tr. at 85, 94, 114-16 (DIB); Tr. at 95, 120-22 (SSI), and were denied upon reconsideration, Tr. at 102, 110, 128-30 (DIB); Tr. at 109, 111, 134-35, 139 (SSI).

On December 13, 2012, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from a vocational expert ("VE") and Plaintiff, who was represented by counsel. Tr. at 39-65. At the time of the hearing, Plaintiff was fifty (50) years old. Tr. at 42-43. On January 10, 2013, the ALJ issued a Decision finding Plaintiff not disabled "from May 4, 2009, through the date of th[e D]ecision," and denying Plaintiff's claim. Tr. at 34; see Tr. at 25-34. Plaintiff then requested review by the Appeals Council, Tr. at 20, which denied Plaintiff's request on July 14, 2014, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint for Writ of Mandamus (Doc. No. 1) on September 12, 2014, followed by an Amended Complaint (Doc. No. 14) on December 4, 2014, seeking judicial review of the Commissioner's final decision.

Plaintiff raises four issues on appeal: (1) whether "the ALJ posed an incorrect hypothetical referencing the left upper extremity"; (2) whether the ALJ "improperly evaluated" the opinion of treating physician William Pennick, M.D.; (3) whether the ALJ improperly considered Plaintiff's limited medical treatment as a basis for his determinations;[2] and (4) whether "the ALJ erred in not finding [Plaintiff]'s depression is a severe impairment." Plaintiff's Memorandum in Support of the Complaint (Doc. No. 23; "Pl.'s Mem."), filed March

---

[2] Rather than present this as a separate issue, Plaintiff addresses this issue as part of her argument for the second issue, regarding Dr. Pennick's opinions. See Pl.'s Mem. at 14-16. The undersigned treats it separately, however, because it also concerns the ALJ's credibility finding and is mostly distinct from Plaintiff's other arguments regarding Dr. Pennick.

2, 2015, at 8, 11, 16 (emphasis and some capitalization omitted). Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.") on April 29, 2015. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasoned stated below.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 27-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 4, 2009, the alleged onset date." Tr. at 27 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the upper extremities,

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

degenerative disc disease of the cervical spine, and hypertension." Tr. at 27 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 28 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work . . . except [she] must avoid ladders or unprotected heights; avoid operation of heavy moving machinery; avoid overhead reaching with her right upper extremity; avoid push/pull arm controls; and avoid using her right arm as a guide. [Plaintiff] can only occasionally bend, crouch, kneel, stoop, squat, and/or crawl.

Tr. at 28 (citation and emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work . . . as an insurance customer service representative . . . [and a] customer service clerk." Tr. at 32 (emphasis and citations omitted). At step five, the ALJ considered Plaintiff's age (forty-six (46) years old on the alleged disability onset date), education ("at least a high school education"), work experience, and RFC, and the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 33 (emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs a "surveillance system monitor"; an "order clerk, food and beverage"; a "ticket taker"; and a "ticket seller." Tr. at 33 (citations omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from May 4, 2009, through the date of th[e D]ecision." Tr. at 34 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'"  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

The four issues Plaintiff raises are addressed in turn below.

**A.  The VE's Testimony (The ALJ's Step Five Findings)**

Plaintiff argues the ALJ erred by posing "an incorrect hypothetical" to the VE. Pl.'s Mem. at 8 (capitalization and emphasis omitted); see id. at 8-11. An ALJ poses a hypothetical question to a VE as part of his step-five determination of whether the claimant can obtain work in the national economy. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted).

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citations omitted). "[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1269 (11th Cir. 2015).

Here, Plaintiff's argument concerns the following portion of the ALJ's hypothetical provided to the VE at the hearing: "Assume I find that . . . [Plaintiff] needs to avoid overhead reaching with the <u>left</u> upper extremity. She needs to avoid push or pull of arm controls. And she can basically use the left hand or arm as a guide. She's right-handed." Tr. at 57 (emphasis added); <u>see</u> Pl.'s Mem. at 8-10. As Plaintiff correctly points out, and Defendant agrees, the limitations stated in the hypothetical differ somewhat from the RFC finding that Plaintiff must "avoid overhead reaching with her <u>right</u> upper extremity; avoid push/pull arm controls; and avoid using her right arm as a guide." Tr. at 28 (some emphasis omitted); <u>see</u> Pl.'s Mem. at 8, 10; Def.'s Mem. at 5.

Plaintiff argues that the hypothetical was "incorrect" because it "included limitations on the LEFT upper extremity, which is the opposite extremity that [the ALJ] note[d] in his RFC finding in the written Decision, and the opposite extremity supported by the objective medical evidence on the record." Pl.'s Mem. at 8. Plaintiff contends that this error "made a significant difference" because "the VE testified to jobs with the understanding that the hypothetical person was 'right hand dominant[,'] and that the severe limitations in the hypothetical person were in the non-dominant left hand." <u>Id.</u> at 10 (citing Tr. at 57).

Conceding the error, Defendant asserts that it was harmless because "Plaintiff's limitation in overhead reaching is irrelevant" to the job of a surveillance system monitor, which is one of the jobs the VE stated Plaintiff is capable of performing. Def.'s Mem. at 5. Defendant asserts that hand dominance is also irrelevant here and that "[a] limitation in reaching overhead with the right arm does not otherwise limit the ability to use the right

hand."[4] Id. at 6-7. According to Defendant, "even though the RFC and hypothetical did not match in terms of Plaintiff's limits in overhead reaching, there were still a significant number of [surveillance system monitor] jobs in the national economy that Plaintiff could perform, so the ALJ correctly concluded Plaintiff was not disabled." Id. at 7.

The undersigned agrees with Defendant. Notwithstanding the ALJ's error in confusing Plaintiff's right and left upper extremities in the hypothetical, the RFC finding remains consistent with an ability to perform the job of a surveillance system monitor, which involves no reaching. See Dictionary of Occupational Titles Listing No. 379.367-010, 1991 WL 673244. The VE testified there are 89,000 surveillance system monitor jobs in the national economy and 2,200 in Florida, Tr. at 58, which alone constitutes a significant number, see Brooks v. Barnhart, 133 F. App'x 669, 671 (11th Cir. 2005) (concluding that "[t]he ALJ's finding that 840 . . . jobs constituted a significant number in the national economy [was] supported by substantial evidence").

Accordingly, substantial evidence supports the ALJ's step-five finding that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 33 (emphasis and citation omitted). The ALJ's error, therefore, is harmless. See Bohn v. Astrue, No. 8:12-CV-354-T-TGW, 2013 WL 494059, at *6 (M.D. Fla. Feb. 7, 2013) (unpublished) (stating that "even if there had been an error with respect to the jobs of ticket

---

[4] Defendant also acknowledges the difference between the hypothetical and RFC finding regarding Plaintiff's ability to use her arm or hand as a guide. Def.'s Mem. at 6. Specifically, the ALJ stated in the hypothetical that Plaintiff "can basically use the left hand or arm as a guide," Tr. at 57 (emphasis added), but he stated in the RFC finding that Plaintiff must "avoid using her right arm as a guide," Tr. at 28 (some emphasis omitted). According to Defendant, these statements are "semantically different" but "are complements in terms of Plaintiff's functioning," and Defendant further notes that "the VE interpreted this as merely ruling out bilateral use of the hands for functions like typing and still found Plaintiff could adjust to other work." Def.'s Mem. at 6 (citing Tr. at 57-58).

seller and parking lot cashier, that error would be harmless since the photograph finisher job alone supports the law judge's finding that there are jobs in significant numbers in the national economy that the plaintiff can perform").

**B. The ALJ's Evaluation of Treating Physician Dr. Pennick's Opinion**

Plaintiff disputes the ALJ's evaluation of treating physician Dr. Pennick. See Pl.'s Mem. at 11-16. According to the Regulations, a treating physician's or psychiatrist's medical opinion[5] is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. See 20 C.F.R. § 404.1527(c). When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the following factors: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." Id. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also id. §§ 404.1527(e), 416.927(f).

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-9-

reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

Here, Plaintiff raises several arguments disputing the ALJ's evaluation of the opinions of Dr. Pennick, Pl.'s Mem. at 11-16, who treated Plaintiff for various symptoms from June 2009 to December 2012, see Tr. at 319-30 (treatment records from June 2, 2009 to April 14, 2011); Tr. at 340-50 (treatment records from April 14, 2011 to November 16, 2012); Tr. at 353 (treatment record from October 18, 2012); Tr. at 356-57 (treatment records from August 13, 2012 and August 27, 2012); Tr. at 358-59 (two letters by Dr. Pennick from December 2012). Plaintiff's arguments primarily address the following portion of the Decision in which the ALJ explained why he gave little weight to Dr. Pennick's opinions:

> [Dr. Pennick] indicated that [Plaintiff] is unable to work due to her shoulder pain. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. In fact, the objective evidence he reported does not support the conclusions. Dr. Pennick indicated that based on physical exam, [Plaintiff] had significant discomfort with movement of her right shoulder limiting her ability to use the right arm. He noted, she has had multiple visits for her shoulder, but plain x-rays were negative. He was her treating physician, but had not reviewed an MRI of her shoulder, which was done in August 2012 by the time he submitted his first statement in December 2012. Such delay indicates that her condition may not have been as severe as indicated. In the later statement, he lessened his limitation and indicated [Plaintiff] is unable to do work requiring repetitive use of her arm. This would seem to indicate that she could work with appropriate limitations as indicated in the RFC assessment . . . .

Tr. at 31.

The opinions at issue come from two letters written by Dr. Pennick in December 2012. See Tr. at 358-359. The first, addressed to Plaintiff's attorney on December 3, 2012, presents "a summary of [Plaintiff's] care" and states as follows:

> [Plaintiff] has been having problems with her right arm at least since 2009. She has been tried on multiple medications. In addition to pain medications[,] she has been given muscle relaxants and recently Cymbalta for management of her chronic pain. She has had multiple visits for her shoulder but has only had plain xray which was negative. I[n] order to more effectively evaluate shoulder she needs MRI which because of cost she has not received. Based on physical exam she has significant discomfort with movement of her right shoulder limiting her ability to use the right arm.
> . . . .
> Patient is unable to work at this time because of shoulder pain. Currently attempting to get MRI and Orthopedic evaluation.

Tr. at 358. The second letter, addressed to "Whom It May Concern" on December 7, 2012, is a "followup" to the first letter stating as follows:

> Reviewed both MRI of neck and shoulder.  The MRI of the neck shows significant cervical disc disease which would explain some of the discomfort in neck and shoulder and weakness right arm. In addition, MRI shoulder suggest rotator cuff tendinitis. Both of these abnormalities may be contributing to the patient right shoulder pain and weakness and require further evaluation by Orthopedic.
> I still feel patient unable to do any work that requires repetitive us[e] of her arm. Attached is a copy of the MRI reports.

Tr. at 359. The attached MRI reports are dated November 7, 2012 and August 28, 2012. See Tr. at 360-63.

As noted, Plaintiff raises several arguments regarding the ALJ's evaluation of Dr. Pennick's opinions. Among these arguments, first, Plaintiff contends that "[t]here is no evidence in the record to support the ALJ's statement[] that Dr. Pennick had not reviewed the

MRI of her shoulder, done in August, 2012, when he submitted his first statement in December, 2012." Pl.'s Mem. at 13.  Second, Plaintiff disputes the ALJ's statement that Dr. Pennick's delay in examining the MRI reports "indicates that [Plaintiff's] condition may not have been as severe as indicated." Id. at 13 (quoting Tr. at 31).  Plaintiff suggests this delay could be due to "a number of reasons."  Id. at 14.   Third, Plaintiff appears to dispute the ALJ's statement that Dr. Pennick "lessened his limitation" in the December 7, 2012 letter after reading the MRI reports.  Id. at 13 (quoting Tr. at 31).

A review of the record, however, supports the ALJ's statements.  First, it is reasonable to infer from the two December 2012 letters that Dr. Pennick had not reviewed the MRI reports when writing the first letter, on December 3, 2012, see Tr. at 358-59, and nothing in the record suggests otherwise.[6]  Second, even if other reasons could explain the delay between the MRI reports and Dr. Pennick's review of them, the record does not suggest any other reason.  Absent other indications, it is within the ALJ's reasonable exercise of discretion to infer a lack of urgency, suggesting that Plaintiff's problem was not a severe one.  Third, comparing the two December 2012 letters, it is reasonable to infer that, in the second letter, Dr. Pennick "lessened [the] limitation" he assigned to Plaintiff.  Tr. at 31.  While Dr. Pennick's opinion in the December 3, 2012 letter appears to rule out all work for Plaintiff, see Tr. at 358, the December 7, 2012 letter rules out only work "that requires repetitive us[e] of [Plaintiff's] arm," Tr. at 359.

---

[6] Plaintiff asserts, in a footnote, that "Dr. Pennick had in fact reviewed the MRIs" when he "referred [Plaintiff] to an Orthopedic Specialist for Right Shoulder Impingement syndrome on November 16, 2012." Id. at 13 n.6 (citing Tr. at 350).  The treatment note Plaintiff cites in support of this assertion, however, indicates only that Dr. Pennick referred Plaintiff to an orthopedic facility due to "right shoulder pain (for: Impingement syndrome of right shoulder)." Tr. at 350.  There is no mention of an MRI scan and nothing to indicate that the recommendation was based on MRI results.

Indeed, as the ALJ states, Dr. Pennick's opinion in the December 7, 2012 letter "would seem to indicate that [Plaintiff] could work with appropriate limitations as indicated in the RFC assessment." Tr. at 31. In other words, the opinion Dr. Pennick expressed after having reviewed the MRI reports seems essentially consistent with the arm-use limitations in the RFC finding. Specifically, the ALJ stated in the RFC finding that Plaintiff must "avoid push/pull arm controls," avoid using "her right upper extremity" for "overhead reaching," "and avoid using her right arm as a guide." Tr. at 28 (emphasis omitted).

Upon review, the undersigned finds that the ALJ's determination as to Dr. Pennick's opinions is reasonable and supported by substantial evidence.

## C. The ALJ's Consideration of Plaintiff's Limited Medical Treatment

Plaintiff argues that the ALJ improperly considered her limited medical treatment as a basis for the ALJ's determinations to discredit Dr. Pennick's opinions and Plaintiff's credibility. See Pl.'s Mem. at 14-15.

"[C]redibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). An ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may

reject them as not credible, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

"One factor that the ALJ may consider" when determining the credibility of an applicant's claim "is the level of treatment sought by the claimant." Brown v. Comm'r of Soc. Sec., 425 F. App'x 813, 817 (11th Cir. 2011) (citing SSR 96-7p, 1996 WL 374186 (July 2, 1996)). "When denying an application based on a claimant's failure to comply with prescribed medical care, the ALJ must consider whether the claimant is able to afford the medical care." Id. (citing Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003)). "Nevertheless, if the claimant's failure to follow medical treatment is not one of the principal factors in the ALJ's decision, then the ALJ's failure to consider the claimant's ability to pay will not constitute reversible error." Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) Id. (citation omitted).

Here, the ALJ found Plaintiff's statements regarding her symptoms and limitations "not entirely credible." Tr. at 30. As part of this credibility finding and the overall RFC and disability determinations, the ALJ addressed Plaintiff's limited treatment in a passage immediately after his evaluation of Dr. Pennick's opinions. See Tr. at 31-32. The ALJ stated, among other things, "The evidence shows that [Plaintiff]'s treatment has been minimal since her alleged onset date, limited to medication only. She has not been to physical therapy or required pain management." Tr. at 31 (citation omitted). The ALJ also "note[d] that [Plaintiff] has not required extended inpatient hospitalization for a physical problem or even emergency room visits." Tr. at 32. Furthermore, addressing Plaintiff's allegations of depression, the ALJ

stated that Plaintiff "never sought treatment with a mental health professional" and that Plaintiff's "testimony to crying spells, forgetfulness, and difficulty with concentration and tasks completion are inconsistent with her failure to seek mental health treatment." Tr. at 32.

Plaintiff takes issue with the ALJ's finding that her treatment has been limited to medication and the ALJ's failure to consider whether Plaintiff's lack of money and insurance has prevented her from obtaining further treatment. See id. According to Plaintiff, the record shows that "she had undergone physical therapy, injections and pain management, in the past when she had insurance." Pl.'s Mem. at 14; see Tr. at 281 (Plaintiff's questionnaire response referring to receiving "a TENS [(transcutaneous electrical nerve stimulation)] shot years ago for [her] back and shoulder pain," as well as "physical therapy 3 to 4 times" and "paraffin wax treatment"); Tr. at 333 (report from consultative examiner Hung Tran, M.D., addressing Plaintiff's past medical history, including "[p]hysical therapy for 2 months"; injections that "helped somewhat but since 2002, . . . did not work at all"; and "pain management for a year but no more insurance to continue medicine"). Plaintiff asserts that "throughout the record, [she] indicated . . . that she was unable to pay for recommended medical treatment," and she contends that "[t]he ALJ completely ignored that evidence." Pl.'s Mem. at 14 (citations omitted).

Considering Plaintiff's arguments, first, the undersigned finds that the record supports the ALJ's statement that Plaintiff's "treatment has been minimal since her alleged onset date, limited to medication only." Tr. at 31 (emphasis added); see Tr. at 319-30, 340-50, 353, 356-57 (treatment notes). Absent indications to the contrary, it is reasonable to infer that other

treatments mentioned in the record, such as physical therapy and injections, occurred prior to Plaintiff's alleged onset date of May 4, 2009.  See Tr. at 281, 333.

Second, the undersigned finds that Plaintiff's limited medical treatment was not "one of the principal factors in the ALJ's [D]ecision," and therefore any failure to consider whether Plaintiff could afford additional treatment is harmless.  Dawkins, 848 F.2d at 1213.  Instead, the ALJ noted this factor among many other reasons for discounting Plaintiff's allegations and finding Plaintiff capable of working.  See Tr. at 31-32.  These other reasons are supported by substantial evidence in the record, as discussed below.

Among these reasons, the ALJ noted that "an MRI showed minimal findings and during examinations, she had full range of motion and a normal gait."  Tr. at 31; see Tr. at 351-52, 354-55 (MRI reports);[7] Tr. at 327, 341 (Dr. Pennick's treatment notes); Tr. at 335 (Dr. Tran's examination report); Tr. at 337 (Range of Motion Report Form).  The ALJ also pointed to the Dr. Tran's examination findings, including that Plaintiff had "no difficulty getting in and out of the examining room table and chair" and that she had "no limitations in motion" or "impairment of gross and fine movements."  Tr. at 31-32; see Tr. at 334-35.  The ALJ also noted that Plaintiff is able to perform a number of daily tasks, including dressing and bathing herself, driving, and shopping, and he stated that Plaintiff's activities otherwise seem "self-limited only."  Tr. at 32.  The ALJ pointed out, furthermore, that Plaintiff's hypertension "seems well controlled" by medication, that medication improved her symptoms of depression, and that Plaintiff "admitted that her medication does help."  Tr. at 32; see Tr. at

---

[7] Copies of these same two MRI reports are located later in the administrative transcript. See Tr. at 360-63.

44, 52 (Plaintiff's hearing testimony); Tr. at 321, 323, 327, 344 (Dr. Pennick's treatment notes). As to Plaintiff's depression, the ALJ concluded that "[t]here is no indication of panic attacks or crying spells of the frequency or severity that would preclude [Plaintiff] from performing gainful work activity." Tr. at 32.

Accordingly, Plaintiff's contentions notwithstanding, the undersigned finds that substantial evidence supports the ALJ's conclusions, and any error in the ALJ's failure to consider Plaintiff's ability to afford treatment is harmless.

### D. The ALJ's Determination Regarding Depression

Plaintiff contends that "[t]he ALJ erred in not finding that [Plaintiff]'s depression is a severe impairment." Pl.'s Mem. at 16 (emphasis and come capitalization omitted); see id. at 16-18. According to Plaintiff, "Throughout the record, [Plaintiff] complains of depression and an inability to sleep due to chronic pain and inability to afford medical treatment." Id. at 16. Plaintiff points to her hearing testimony, see id. at 16-17 (referring to Tr. at 52-53), and she also points out that "Dr. Pennick diagnosed depression, chronic pain and insomnia for which he prescribed Ambien and Cymbalta," id. at 17. Plaintiff asserts, "It is apparent that [her] depression, which is documented by clinical findings, has a more than minimal impact on her functioning." Id. at 18. She contends that the ALJ improperly found that her "depression is not severe because she 'did not require' psychological treatment, and the ALJ never even asked [Plaintiff] why she did not seek treatment with a psychiatrist or psychologist." Id. at 17.

As discussed above, Plaintiff's limited treatment for depression and other impairments was not the principal basis for the ALJ's finding that Plaintiff's impairments were not severe and did not preclude an ability to work. Instead, the ALJ provided other reasons, including

that her medication, Cymbalta, "improv[ed] her symptoms" and that "[t]here is no indication of panic attacks or crying spells of the frequency or severity that would preclude [Plaintiff] from performing gainful work activity." Tr. at 32. Moreover, the undersigned finds little evidence of Plaintiff's depression other than in Plaintiff's own statements, which the ALJ found to be "not fully credible." Tr. at 30. Dr. Pennick's treatment notes, for instance, diagnose Plaintiff's depression as "Situational." Tr. at 341, 356. Dr. Pennick's December 3, 2012 letter, "a summary of [Plaintiff's] care," does not mention depression and indicates only that Cymbalta was prescribed "for management of [Plaintiff's] chronic pain." Tr. at 358. Accordingly, despite Plaintiff's claim to the contrary, it is not "apparent" that her depression "has a more than minimal impact on her functioning." Pl.'s Mem. at 18. The undersigned finds that the ALJ's conclusions are supported by substantial evidence.

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of § 405(g) **AFFIRMING** the Commissioner's final decision.

2.     The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 17, 2016.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

clr
Copies to:
Counsel of record